NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIVERSITY SPINE CENTER, on assignment of E.C.,<br>　　　　　Plaintiff,<br>v.<br>AETNA, INC.,<br>　　　　　Defendant. | Civil Action No.: 17-8161 (CCC)-(CLW)<br><br>OPINION |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on the motion of Aetna, Inc. ("Defendant") to dismiss the complaint of University Spine Center ("Plaintiff"). (ECF No. 3-1 ("Mot.")). The Court has considered the submissions made in support of and in opposition to the instant motion. (ECF Nos. 5 ("Opp'n"), 6 ("Reply"), 9). The Court decides this matter without oral argument pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is **GRANTED**.

## II. BACKGROUND

Plaintiff is a healthcare provider based in Passaic County, New Jersey, while Defendant is "primarily engaged in the business of providing and/or administering health care plans . . . or policies." (ECF No. 1-1 at 7). Plaintiff initially brought suit against Defendant on or about August 30, 2017 in the Superior Court of New Jersey, Law Division, Passaic County. (*Id.*). Plaintiff avers that this action "arises from Defendant's failure to properly reimburse Plaintiff for the medically necessary and reasonable services provided to Defendant's participant or insured," E.C. (the "Patient"), in the form of spinal surgery. (*Id.* at 8). Plaintiff maintains that the Patient executed an "assignment of benefits," upon which Plaintiff filed claims with Defendant "demanding reimbursement in the amount of $588,765.00." (*Id.*). Defendant,

1

however, reimbursed Plaintiff for only $9,882.39 of the claimed amount. (*Id.* at 9). Plaintiff states that it thereafter "engaged in the applicable administrative appeals process maintained by Defendant," but that "Defendant failed to remit additional payment and failed to provide the documentation requested in Plaintiff's appeal." (*Id.*). Plaintiff accordingly contends that "Defendant's reimbursement amounts to an underpayment of $578,882.61" and brings an action for breach of contract in Count I, failure to make all payments pursuant to a member's plan in violation of the Employee Retirement Income Security Act ("ERISA") Section 502(a)(1)(B) in Count II, and breach of fiduciary duty in violation of ERISA Section 502(a)(3) in Count III. (*See id.* at 9-14).

Defendant properly removed the action to this Court on October 12, 2017. (ECF No. 1). Defendant thereafter filed the instant motion to dismiss on October 19, 2017, contending that: (1) Plaintiff lacks standing to bring its claims because Plaintiff does not have a valid assignment of benefits; and (2) that Counts I and III of Plaintiff's complaint fail as a matter of law. (*See generally* Mot.). Plaintiff filed an Opposition on November 6, 2017, in which Plaintiff agreed to voluntarily dismiss Count I of the complaint. (Opp'n at 3 ("As Defendant has conceded that the Plan is indeed governed by ERISA, Plaintiff agrees to voluntarily dismiss Count I.")). Defendant then filed a Reply on November 9, 2017.

### III. <u>LEGAL STANDARD</u>

#### A. Rule 12(b)(1)

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d. Cir. 2007) (citing *St. Thomas-St. John Hotel Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d. Cir. 2000)).

Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). One key aspect of this case and controversy requirement is standing. *Id.* at 439. "The standing inquiry focuses on whether the party

2

invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

To establish standing, a plaintiff must establish: (1) an "injury in fact," i.e., an actual or imminently threatened injury that is "concrete and particularized" to the plaintiff; (2) causation, i.e., traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court. *Nat'l Collegiate Athletic Ass'n v. Gov. of N.J.*, 730 F.3d 208, 218 (3d. Cir. 2013) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Although a plaintiff bears the burden of establishing the elements of standing, at the motion to dismiss stage, the Court "must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine*, 486 F.3d at 810.

### B. Rule 12(b)(6)

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. City of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers labels and conclusions will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations omitted). However, "the tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when reviewing complaints for failure to state a claim, district courts should engage

3

in a two-part analysis: "First, the factual and legal elements of a claim should be separated.... Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Where, as here, a plaintiff's claims are based on extraneous documents that are referenced in or integral to a complaint, a court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *See In re Burlington Coat Factory Sec. Litig.* 114 F.3d 1410, 1426 (3d Cir. 1997). The complaint in this matter is based on the assignment terms of the Patient's plan and, accordingly, the Court relies on these documents in deciding the present motion.

## IV. DISCUSSION

Defendant contends that Plaintiff lacks a valid assignment of benefits upon which to bring its claims in Counts II and III because "the [P]atient's health benefit plan expressly precludes an assignment of benefits." (Mot. at 5). Plaintiff, in turn, maintains that: (1) "the plain language of the 'anti-assignment clause' does not actually prohibit the assignment of benefits[;]" (2) "the Plan's 'anti-assignment clause' is inapplicable to Plaintiff as Patient's healthcare provider[;]" and (3) "Defendant waived enforceability of the 'anti-assignment clause' through its direct course of dealing with Plaintiff." (Opp'n at 3-8). The Court will address each of these contentions in turn.

### A. The Anti-Assignment Clause Prohibits the Assignment of Benefits and Is Enforceable

"Under § 502(a) of ERISA 'a participant or beneficiary' may bring a civil action to, *inter alia*, 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Univ. Spine Ctr. v. Blue Shield of California*, No. 17-8673, 2017 WL 5513688, at *2 (D.N.J. Nov. 16, 2017) (quoting 29 U.S.C. § 1132(a)). "By its terms, ERISA's civil enforcement provision thus limits standing to plan participants or beneficiaries." *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-

4

4600, 2018 WL 1420496, at *4 (D.N.J. Mar. 22, 2018) (citations omitted). However, "[t]he Third Circuit has recently made clear that, where there is a valid assignment of benefits by the plan participant, a healthcare provider may obtain a derivative right to sue under the patient's plan." *Ctr. for Orthopedics & Sports Med. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 16-8876, 2018 WL 1440325, at *3 (D.N.J. Mar. 22, 2018) (citing *N.J. Brain & Spine Ct. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015); *American Chiropractic Ass'n v. American Specialty Health Inc.*, 625 F. App'x. 169, 175 (3d Cir. 2015)). The Third Circuit has also recently clarified "that anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable," in keeping with the majority of the circuit courts that have addressed the issue. *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, No. 17-1663, 2018 WL 2224394, at *6 (3d Cir. May 16, 2018); *see also Kayal Orthopaedic Ctr., P.C. v. Empire Blue Cross Blue Shield*, No. 16-9059, 2017 WL 4179813, at *3 (D.N.J. Sept. 21, 2017) ("This Court and others in the Third Circuit have routinely held that an unambiguous anti-assignment provision in a health benefits plan bars an alleged assignee's standing to bring claims under ERISA.").

Here, the Patient's "health plan states the following: 'All coverage may be assigned ***only with the written consent of Aetna.***'"[1] (Mot. at 6) (citation omitted). Defendant therefore maintains that "because no such consent was obtained" with respect to the Patient's assignment of benefits to Plaintiff, the "attempted assignment is a legal nullity." (*Id.* at 8). Plaintiff does not contest that the assignment was made without Defendant's consent. Rather, Plaintiff argues that the anti-assignment clause "does not

---

[1] Plaintiff does not include a copy of Patient's insurance policy as an attachment to its complaint. On a motion to dismiss, however, the Court may consider the allegations in the complaint, any exhibits attached to the complaint, matters of public record, and undisputedly authentic documents upon which the plaintiff's complaint is based. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A document falls into the latter category even where the complaint does not cite or "explicitly rely[]" on it; "[r]ather, the essential requirement is that the plaintiff's claim be 'based on that document.'" *Brusco v. Harleysville Ins. Co.*, No. 14-914, 2014 WL 2916716, at *5 (D.N.J. June 26, 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, Plaintiff's complaint explicitly relies on Patient's insurance policy. (ECF No. 1-1). As such, the Court will properly consider the Patient's insurance policy with Defendant's motion to dismiss.

5

prohibit either the assignment of rights or benefits due under the terms of the plan . . . [but only] prohibits the assignment of 'coverage' without the written consent of Aetna." (Opp'n at 4). Essentially, Plaintiff contends that "coverage" is an independent term which "simply means at what point the terms of the Plan itself will be deemed to be effective as to both Aetna and the participant with regard to when a member can receive medical services and expect the Plan to cover some or all of the expense." (*Id.*). Defendants, on the other hand, assert that the terms "coverage" and "benefits" are synonymous, "and [that] the two terms are used interchangeably throughout the plan." (Reply at 2).

The Court disagrees with Plaintiff's construction of the anti-assignment provision. Plaintiff cites to no precedent or specific contractual provision in making its distinction between the terms "coverage" and "benefits" and/or "rights." Plaintiff instead relies on "contextual clues as to the term's meaning" including that: (1) the term "coverage" is not defined in the plan's glossary; (2) the introductory pages of the plan focus on "to whom and under what circumstances 'coverage' will be deemed effective[;]" and (3) "there is no apparent reason that the right to receive payment for services which had already been rendered . . . could not be assigned from one party to another." (Opp'n at 4-5). The Court finds these contentions amount to little more than speculation on Plaintiff's part. Indeed, as Defendant contends, "[t]he entire purpose of the health plan is to define what type of medical services are 'covered' and, correspondingly, what portion of the costs associated with those services will be paid—*i.e.*, 'covered'— by Aetna." (Reply at 2). It is therefore entirely unsurprising that the term "coverage" is not defined in the plan's glossary as "the plan itself is a 144-page definition of 'coverage.'" (*Id.* at 4). The Court accordingly agrees with Defendant that Plaintiff's "strained distinction is one without a difference," and that the anti-assignment clause is clear, enforceable, and prevented the Patient from assigning benefits absent Defendant's consent. (*Id.* at 2).

In sum, "[t]he anti-assignment provision is clear on its face and contains specific and express language stating that the health plan's benefits cannot be assigned," and the Court accordingly finds that

6

it is enforceable. *Kayal*, 2017 WL 4179813, at *3; *see also Univ. Spine Ctr. v. Aetna, Inc.*, No.17-7823, 2018 WL 2332226, at *3 (D.N.J. May 23, 2018) (finding an identical anti-assignment provision "to be clear and unambiguous, and thus valid and enforceable"). Neither party disputes that Defendant has not consented to the assignment of benefits herein. Plaintiff therefore lacks a valid assignment upon which to bring its ERISA claims, which accordingly must be dismissed for lack of standing. *See Univ. Spine Ctr.*, 2018 WL 2332226, at *3 (citing *Neurological Surgery Assocs. P.A. v. Aetna Life Ins. Co.*, No.12-5600, 2014 WL 2510555, at *4 (D.N.J. June 4, 2014)).

### B. Plaintiff Has Not Shown that Public Policy Concerns Render the Anti-Assignment Clause Inapplicable

In the alternative, Plaintiff raises what appears to be a public policy argument that the anti-assignment clause cannot apply to Plaintiff as the "Patient's healthcare provider." (Opp'n at 5). In other words, Plaintiff contends that "an anti-assignment clause cannot be used to frustrate the provider's ability to recover payment from the plan whose very purpose is to provide payment to such providers." (*Id.* at 6). Plaintiff relies on the Fifth Circuit decision in *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569 (5th Cir. 1992), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012). In that case, the Fifth Circuit found that "[w]e interpret the anti-assignment clause as applying only to unrelated, third-party assignees—other than the health care provider of assigned benefits," reasoning that "[t]he anti-assignment clause should not be applicable, however, to an assignee who, as here, is the provider of the very services which the plan is maintained to furnish." *Id.* at 575.

Plaintiff's argument has, however, been explicitly rejected by courts within this district. In *University Spine Center v. Horizon Blue Cross Blue Shield of New Jersey*, 262 F. Supp. 3d 105 (D.N.J. 2017), the court noted as a threshold matter "[t]hat [the] 25–year–old case is not binding and has otherwise been limited." *Id.* at 111; *see also LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 352 (5th Cir. 2002) ("Neither *Hermann I* nor *Hermann II* stands for the proposition

7

that all anti-assignment clauses are *per se* invalid vis-à-vis providers of health care services."). The court went on to reason that "[t]he Anti–Assignment clause, whatever its policy merits, is a bargained-for part of the Plan," and that "New Jersey, for its part, has declined to invalidate anti-assignment clauses as a policy matter." (*Id.*). The court therefore declined to endorse Plaintiff's policy argument. Similarly, the Third Circuit has also rejected Plaintiff's reading of *Hermann*, noting that "in a subsequent decision, the [Fifth Circuit] clarified that it had declined to enforce the anti-assignment clause in *Hermann* only because the clause there did not, by its terms, cover healthcare providers and, consistent with the other Courts of Appeals, it viewed explicit anti-assignment clauses as enforceable. *Am. Orthopedic & Sports Med.*, 2018 WL 2224394, at *5.

The Court is persuaded by this reasoning and accordingly rejects Plaintiff's policy argument that the anti-assignment clause is void for reasons of public policy under *Hermann*. *See Kaul v. Horizon Blue Cross Blue Shield*, No. 15-8268, 2016 WL 4071953, at *3 (D.N.J. July 29, 2016) ("Accordingly, the Court finds no basis in 'federal public policy' to invalidate the Alent Plan's anti-assignment provisions.").

### C. Plaintiff Has Not Shown Defendant Waived the Anti-Assignment Clause

Finally, Plaintiff contends that "Defendant waived enforceability of the 'anti-assignment clause' through its direct course of dealing with Plaintiff." (Opp'n at 7). More specifically, Plaintiff maintains that "[t]he payment made by Defendant as well as their appeal response was prompted solely by Plaintiff's actions . . . and constitutes a waiver of the 'anti-assignment clause' on the part of Defendant." (*Id.* at 8).

"[A]n anti-assignment clause 'may be waived by a written instrument, a course of dealing or even passive conduct, *i.e.* taking no action to invalidate the assignment vis-à-vis the assignee." *Am. Orthopedic & Sports Med. v. Indep. Blue Cross, LLC*, No. 16-8988, 2017 WL 1243147, at *4 (D.N.J. Feb. 24, 2017) (quoting *Garden State Bldgs., L.P. v. First Fid. Bank, N.A.*, 702 A.2d 1315, 1322 (N.J. App. Div. 1997)). However, merely alleging that Plaintiff submitted a claim to Defendant and Defendant issued partial payment is insufficient to show waiver in this context. *See Kaul*, 2016 WL 4071953, at *3 ("In general,

8

a direct payment to a healthcare provider does not constitute waiver of an anti-assignment provision where the plan at issue authorizes such payment."). Numerous courts in this district have also declined to find waiver under the accepted pleading standards where "the Complaint merely asserts that Plaintiff submitted a claim to Defendants and that Defendants failed to remit a proper payment despite Plaintiff's appeal." *Am. Orthopedic & Sports Med.*, 2017 WL 1243147, at \*4; *see also Univ. Spine Ctr.*, 2017 WL 5513688, at \*4; *Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, No. 15-4525, 2015 WL 6082299, at \*4 (D.N.J. Oct. 15, 2015). Indeed, the Third Circuit has recently held that "routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal do not demonstrate 'an evident purpose to surrender' an objection to a provider's standing in a federal lawsuit." *Am. Orthopedic & Sports Med.*, 2018 WL 2224394, at \*6.

Here, the Court finds that Plaintiff's Complaint, which simply avers that Defendant paid only a partial amount of Plaintiff's claim and engaged in the appeals process, is likewise insufficient to establish waiver. "Again, this type of conclusory pleading is prohibited under *Iqbal* and *Twombly*, and Plaintiffs cannot supplement the Complaint through their opposition brief."[2] *Am. Orthopedic & Sports Med.*, 2017 WL 1243147, at \*4. Indeed, the Court notes that Plaintiff's complaint states that "Defendant has failed to provide the requested . . . Plan Policy and identification of the Plan Administrator/Plan Sponsor." (ECF No. 1-1 at 9). This hardly evidences that Defendant actively engaged in a direct course of conduct with Plaintiff as the Patient's valid assignee. The Court accordingly finds that Plaintiff has not pled sufficient factual allegations to show Defendant waived the anti-assignment clause in this instance. *See Kayal*, 2017 WL 4179813, at \*5 (D.N.J. Sept. 21, 2017) (finding waiver inapplicable where "[o]utside of Defendant's

---

[2] While Plaintiff's opposition includes certain additional factual allegations concerning various communications with Defendant and Defendant's alleged failure to raise the anti-assignment clause in the early days of the appeal process, (Opp'n at 8), they are not included in Plaintiff's complaint. It is, moreover, axiomatic that "a pleading may not be amended through briefing." *Fado v. Kimber Mfg., Inc.*, No. 11-4772, 2016 WL 3912852, at \*11 (D.N.J. July 18, 2016). To the extent Plaintiff wishes to replead, such factual allegations must be included in any amended complaint.

9

direct payment to Plaintiff, the only conduct which Plaintiff asserts demonstrates a course of conduct sufficient to constitute waiver was Defendant's written response to Plaintiff's appeal effort").

## V.  CONCLUSION

For the reasons stated above, the Court will dismiss Plaintiff's complaint. To the extent the pleading deficiencies identified by the Court can be cured by way of amendment, Plaintiff is hereby granted thirty (30) days to file an amended pleading. An appropriate Order accompanies this Opinion.

Date: May 30, 2018

_____
CLAIRE C. CECCHI, U.S.D.J.